UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALDEV SINGH MANN,<br><br>Plaintiff<br><br>v.<br><br>ERIC H. HOLDER, JR., et al.,<br><br>Defendants | CASE NO. 1:12-CV-1926 AWI BAM<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>(Doc. Nos. 30, 31) |

    This is an immigration dispute between Plaintiff Baldev Singh Mann ("Mann") and Defendants, who are all government officials.  Mann seeks relief under 5 U.S.C. § 702 (the Administrative Procedures Act ("APA")) and the Declaratory Judgment Act (28 U.S.C. § 2201). Mann challenges the denial of his I-485 application for adjustment of status on the basis of under 8 U.S.C. § 1182(a)(6)(C)(i).  Both parties have moved for summary judgment.  For the reasons that follow, Mann's motion will be denied, and Defendants' motion will be granted.

**FACTUAL BACKGROUND**

    Mann is a native and citizen of India.  In September of 1990, Mann was paroled into the United States upon his attempted entry through Los Angeles International Airport.

    In 1991, Mann was ordered excluded *in absentia*.  Subsequently, Mann moved to reopen the exclusion order, filed an I-589 application for asylum, and applied for a withholding of removal.  Mann's persecution claim was based on his imputed political opinion with Sikh militants in India.  However, Mann disclaimed any association or ties to Sikh militants fighting for

independence in the Indian State of Punjab.  Mann's requested relief was denied, and the order of exclusion became final in August 1998 when the Board of Immigration Appeals ("BIA") affirmed the Immigration Judge's ("IJ") decision/denial.

Instead of departing the United States, Mann sought to adjust his status through his wife and daughter, who are both citizens of the United States.  In July 2012, Mann filed an I-485 application for adjustment of status based on an approved I-130 visa petition that had been filed by Mann's daughter.

On November 19, 2012, the United States Citizenship and Immigration Services ("CIS") denied Mann's I-485 application.  See Administrative Record (Doc. No. 29) ("AR") at 2.  CIS denied the application because CIS could not determine Mann's true identity, and Mann made willful material misrepresentations, which made him ineligible for an adjustment of status under 8 U.S.C. § 1182(a)(6)(C)(i).  In particular, CIS found that:  (1) Mann submitted two birth related certificates, but one of the certificates does not indicate Mann's claimed legal name, see id. at 2; (2) Mann used the name "Bhadar Singh" and gave a birth date of May 13, 1958, upon entry into the United States in September 1990, see AR at 2, 94, 96; (3) Mann submitted a birth certificate with a birth date of May 13, 1957 and the name "Baldev Singh," but has also stated under oath that his true legal name is "Baldev Singh Mann," see AR at 2, 3, 78, 97; (3) Mann submitted a birth certificate, but later submitted a certificate that stated a birth certificate was unavailable, see AR at 3, 36, 78; (4) Mann's 1991 request for asylum indicated that he first entered the United States near the San Ysidro California Port of Entry in October 1990 without inspection and by foot, but evidence reveals that Mann entered the United States on September 3, 1990 by a flight that landed at Los Angeles International Airport, see AR 3, 79, 94; (5) Mann stated under oath that he had never provided immigration authorities with a different account of his first entry into the United States, see AR 3, 98; (6) Mann submitted an affidavit that stated he first came to the United States in 1985, but returned to India in 1987, see AR 3, 87-92, 98; and (7) when asked whether the affidavit was true in light of previous testimony that he first entered the United States in October 1990, Mann stated that his attorney had filled out the affidavit and that he did not say that he first entered in 1985, but later he indicated that the affidavit was correct, see AR 3, 87-92, 98.

As part of its I-485 decision, CIS noted Mann's explanation for some of the above contradictions or misrepresentations. With respect to using different names, Mann gave two responses. One response was: "I started using my family name when I got here. I was advised to use this name." AR 2. The other response, which was provided by Mann's attorney, was: "Mr. Mann has consistently used 'Baldev Singh Mann' as his complete name and May 13, 1957, as his date of birth." AR 3. CIS did not agree with the latter response and referred to the previously identified names used by Mann. See id. With respect to birth records, Mann gave two responses. One response was: "Before it was registered in the district, now there is a new district." Id. The other response, which was provided by Mann's attorney, was: "Mr. Mann tried to explain at the October 4, 2012 interview, that he did not have a copy of the birth certificate which he had previously submitted to the INS, and that he was not able to obtain a new birth certificate from India because the village where he was born was transferred to a new district." Id. CIS did not find the explanations plausible, and noted it was unclear how a village gets transferred or why the transfer process would delete records. See id.

Following CIS's denial of Mann's I-485 application, Mann filed this lawsuit on November 27, 2012.

On December 6, 2012, Mann was removed from the United States to India pursuant to the 1998 final order of exclusion.

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is an appropriate mechanism for reviewing agency decisions under the APA. City & County of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997); Occidental Engineering Co. v. Immigration & Naturalization Service, 753 F.2d 766, 769-70 (9th Cir. 1985). However, courts do not utilize the standard analysis for determining whether a genuine issue of material fact exists. See Occidental, 753 F.2d at 769-70; Academy of Our Lady of Peace v. City of San Diego, 835 F.Supp.2d 895, 902 (S.D. Cal. 2011); California RSA No. 4 v. Madera Cnty., 332 F.Supp.2d 1291, 1301 (E.D. Cal. 2003). In reviewing an agency action, the relevant legal question for a court is "whether the agency could reasonably have found the facts as

1  it did." San Francisco, 130 F.3d at 877; Occidental, 753 F.2d at 769.  A court "is not required to
2  resolve any facts in a review of an administrative proceeding." Occidental, 753 F.2d at 769;
3  California RSA, 332 F.Supp.2d at 1301.  As such, "the function of the district court is to
4  determine whether or not as a matter of law the evidence in the administrative record permitted the
5  agency to make the decision it did." San Francisco, 130 F.3d at 877; Occidental, 753 F.2d at 769;
6  California RSA, 332 F.Supp.2d at 1301.

## CROSS MOTIONS

*Plaintiff's Argument*

Mann argues that CIS's determination of ineligibility was erroneous as a matter of law. Misrepresentations under § 1182(a)(6)(C)(i) must be material.  None of the misrepresentations were material because they did not have a natural tendency to influence the decision of the CIS, the BIA, or the IJ.

With respect to dates of birth, in every application submitted to CIS, as well as the birth certificate that was submitted, a birth date of May 13, 1957 appears.  Any other discrepancy as to date of birth is simply a minor typographical error.

With respect to different names, in Mann's June 1991 I-589 application for asylum, Mann stated that his true name was Baldev Singh Mann, he had also used the name Bhadar Singh, and he had used the name Bhadar Singh to travel to the United States.  Mann states that he has consistently used the name Baldev Singh Mann as his complete name.

With respect to the birth related documents, the birth certificate that listed Baldev Singh was dated April 17, 1990.  That Mann's full name did not appear was not unusual because, prior to 1960, birth records in India were not prepared at the time of birth and were only prepared upon request.  Similarly, when Mann submitted the certificate of non-availability of birth record, he no longer had a copy of the birth certificate that he had previously submitted.  When he attempted to obtain a new birth certificate, he was unable to do so because the village where he was born had been transferred to a new district.  From the new district, he was only able to obtain a certificate of non-availability.

With respect to date and manner of entry, the record clearly shows that Mann arrived in the United States on September 3, 1990 at Los Angeles.  The San Ysidro October 1990 representation was made as part of Mann's I-589 application.  The representation was immaterial because it would not have mattered to the IJ adjudicating the I-589 application whether Mann entered in October 1990 or September 1990.  If Mann had otherwise met his burden of proof, the IJ would have granted asylum.

With respect to the prior entry, in June 2009, Mann declared that he first entered the United States in 1985 and returned to India in 1987.  In a later interview, Mann stated that he first entered the United States in October 1990.  It was obvious from the interview that Mann had difficulty recalling dates pertaining to events that took place many years ago, and Mann informed the interviewing officer that he had difficulty remembering things because he was hit in the head by police in India.  Further, although Mann's adjustment of status application stated that he entered the United States in September 1990, he continued to state in the interview that he entered the United States in October 1990.  Regardless, any inconsistency would not have affected any of Mann's applications.  The asylum application was based on events that took place in July 1990.  A prior entry in 1985 and departure in 1987 would not matter.  Further, the declaration was made as part of a motion to reopen proceedings, the basis of which was ineffective assistance of counsel.  A previous reentry and departure in the 1980's would have no effect on a decision to reopen.

Because none of the alleged misrepresentations would have had a natural tendency to affect proceedings, the misrepresentations were immaterial and could not be grounds for denying the I-485 application.  Summary judgment therefore should be granted.

*Defendants' Argument*

Defendants argue that CIS's findings are reasonably supported by the record.  Mann made multiple misrepresentations, and those misrepresentations went to the core issues of identity and manner of entry.  Mann gave different names and birth dates, and such information is fundamental to determining an alien's identity.  Without knowing who an applicant alien is, CIS cannot determine the alien's eligibility for a status adjustment.  Mann gave no satisfactory answers regarding the different names that had been used.

5

Mann also gave inconsistent information regarding the place and manner of his entry. Mann described several different manners and dates of entry. Immigration history is relevant to the question of admissibility, and inconsistent information deprives CIS of a particular aspect of an alien's life. Such information might help CIS confirm the alien's identity and eligibility for adjustment. Although Mann attempted to give explanations for his various statements, he provided no corroboration for any explanation.

Mann had the burden of proving eligibility for an adjustment of status, and he failed to do so. Summary judgment therefore should be granted.

*Legal Standards*

a.   APA -- § 706(2)

The APA permits lawsuits against an agency when an individual has suffered "a legal wrong because of agency action . . . ." 5 U.S.C. § 702; Rattlesnake Coalition v. United States EPA, 509 F.3d 1095, 1103 (9th Cir. 2007). The agency action at issue must be "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704; Mamigonian v. Biggs, 710 F.3d 936, 641 (9th Cir. 2013). Under § 706(2), a court will reverse an agency's action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if its factual findings are "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E); Herrera v. United States Citizenship & Imm. Servs., 571 F.3d 881, 885 (9th Cir. 2009); Love Korean Church v. Chertoff, 549 F.3d 749, 754 (9th Cir. 2008). The party challenging the agency action bears the burden of showing that the action violates § 706(2). See Managed Pharm. Care v. Sebelius, 716 F.3d 1235, 1244 (9th Cir. 2013); Lockheed Martin Corp. v. Administrative Review Bd., 717 F.3d 1121, 1129 (10th Cir. 2013). The scope of review under § 706(2) is "narrow," and "a court is not to substitute its judgment for that of the agency." Judulang v. Holder, 132 S. Ct. 476, 483 (2011). The court's review "is based on the administrative record[,] and the basis for the agency's decision must come from the record." National Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003). Agency action is "valid if the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." Conservation Cong. V. United States Forest Serv., 720 F.3d 1048, 1054 (9th Cir. 2013). The

6

standard for invalidity under § 706(2)(A) is met "only where the party challenging the agency's decision meets a heavy burden of showing that the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Managed Pharm., 716 F.3d at 1244. There is a presumption that the agency's action is valid. Peck v. Thomas, 697 F.3d 767, 772 (9th Cir. 2012).

  b. 8 U.S.C. § 1182(a)(6)(C)(i)

"Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i); Corona-Mendez v. Holder, 593 F.3d 1143, 1145 (9th Cir. 2010). The test for materiality is whether the misrepresentation has "a natural tendency to influence the decisions" of the relevant federal immigration agency. Kungys v. United States, 485 U.S. 759, 772 (1988); Essa v. Holder, 544 Fed. Appx. 772, 773 (9th Cir. 2013); Parlak v. Holder, 578 F.3d 457, 464-65 (6th Cir. 2009); Forbes v. INS, 48 F.3d 439, 442 (9th Cir. 1995). However, "finding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision." Injeti v. United States Citizenship & Immigration Servs., 737 F.3d 311, 316 (4th Cir. 2013). A willful misrepresentation may be demonstrated by showing that the statement was deliberate and voluntarily made with knowledge of falsity. See Essa, 544 Fed. Appx. at 773; Parlak, 578 F.3d at 464; Forbes, 48 F.3d at 442. "[F]alse statements and other inconsistencies must be viewed in light of all the evidence presented in the case." Kaur v. Gonzales, 418 F.3d 1061, 1066 (9th Cir. 2005)

  *Discussion*

  As indicated above, CIS denied Plaintiff's I-485 application based on conflicting statements regarding his original date of entry, his place of entry, and his identity. Under the narrow APA review, the Court cannot find that CIS acted in an arbitrary or capricious manner.

  CIS concluded that it was unable to determine Plaintiff's identity because of the different birth dates and different names that Plaintiff himself gave, and the discrepancies with the birth

documents. Plaintiff has given two different birth years, 1957 and 1958. Three names have been associated with Plaintiff. Plaintiff gave immigration officials the name "Bhadar Singh" when he arrived in Los Angeles. In other interactions and applications, Plaintiff has stated that his name is "Baldev Singh Mann." In one birth certificate, the name appears as "Baldev Singh." Each of the three names is similar, but they are obviously not the same. The problem of identity was compounded when Plaintiff submitted a second certificate that stated no birth certification was available. The second certification calls into question the original birth certificate, and the original birth certificate did not have the name "Mann" on it. This information legitimately brings the issue of identity into question.

It is true that Plaintiff attempted to explain the discrepancies between the names. However, CIS did not find Plaintiff's explanations credible. Why Plaintiff chose to travel and enter the United States under the name "Bhadar Singh" is not clear, nor is it clear why Plaintiff did not tell the immigration officials at Los Angeles airport that his name was actually "Baldev Singh Mann." It also is not entirely clear why the conflicting birth certificate information was presented. Although it appears to the Court that Plaintiff was attempting to explain that the bureaucratic change concerning his village was the reason for the conflicting certificates, that explanation does not necessarily explain the deletion of the previous birth certificate.

In terms of materiality, in an unpublished opinion, the Second Circuit has held that the issue of identity is not *per se* material. See Rahman v. Mukasey, 272 Fed. Appx. 35, *38 (2d Cir. 2008). However, *Rahman* did not involve a case in which multiple names and conflicting birth documents were given. When CIS cannot determine who is actually applying for an adjustment of status due to conflicting representations and documentation provided by the applicant, it is unclear how CIS can do an appropriate investigation and vetting of an applicant. Concerns of security and legality of adjustment are clearly implicated if CIS cannot do an appropriate investigation. Under such circumstances, which exist in this case, identity and representations thereof would have "a natural tendency to influence the decisions" of CIS and, thus are material.

With respect to Plaintiff's representations regarding place and manner of entry, Plaintiff gave three different dates and circumstances for his first entry into the United States. As indicated

above, Plaintiff has stated that he came to the United States in 1985, but then left in 1987. Plaintiff has also stated that he arrived in October 1990 by foot through San Ysidro. In actuality, it appears that Plaintiff arrived in September 1990 by airplane in Los Angeles. These are quite different, and cannot all be true.

In terms of materiality, it is not clear to the Court that these contradictory statements are in and of themselves material. Defendant does not explain the significance between the October 1990 San Ysidro entry story and the September 1990 Los Angeles entry story. It appears that Defendants have accepted that Plaintiff actually entered the United States in September 1990 in Los Angeles. Without an explanation about the significance of the San Ysidro story, the Court can only speculate as to materiality. Defendants do discuss the significance of the 1985 entry and 1987 exit story. Defendants state that if this information had been disclosed as part of Plaintiff's I-589 asylum application, it could have influenced CIS's decision. That is, CIS may have rejected Plaintiff's fears of persecution because he was willing to travel back to India. But, as Plaintiff points out, Plaintiff's alleged persecution did not begin until July 1990. Conduct occurring in 1987 would not appear to be relevant to persecution claims that arose in 1990.

Nevertheless, even if the contradictory statements regarding place, manner, and date of entry are not alone and *per se* material, they have a tendency to complicate the identity issue. Contradictory statements are examined in light of the evidence as a whole. See Kaur, 418 F.3d at 1066. Plaintiff's provision of three different place and manner of entry stories only amplifies the contradictory birth related certificates, three different names, and two different birth dates.

Under the APA, there is a presumption that an agency's decision is valid, and the burden on Plaintiff to show invalidity is not light. See Managed Pharm., 716 F.3d at 1244; Peck, 697 F.3d at 772. In making its decision, CIS pointed to contradictory and inconsistent representations by Plaintiff regarding his identity and place and manner of entry. The Court "is not to substitute its judgment for that of the agency." Judulang, 132 S. Ct. at 483. Plaintiff has not met his burden of showing that CIS "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to

9

a difference in view or the product of agency expertise." Managed Pharm., 716 F.3d at 1244. CIS's decision to invoke § 1182(a)(6)(C)(i) to deny Plaintiff's I-485 application was not arbitrary, capricious, or an abuse of discretion. Because the "evidence in the administrative record permitted the agency to make the decision it did," summary judgment in favor of Defendants is appropriate. San Francisco, 130 F.3d at 877; Occidental, 753 F.2d at 769; California RSA, 332 F.Supp.2d at 1301.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED;

2. Defendant's motion for summary judgment is GRANTED; and

3. The Clerk shall enter judgment for Defendant and CLOSE this case.

IT IS SO ORDERED.

Dated:   September 24, 2014                                  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                                              SENIOR  DISTRICT  JUDGE